FILED & ENTERED

APR 14 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Ateco Inc<br><br><br><br><br><br><br>Debtor(s). | Case No.: 1:10-bk-22623-MT<br><br>CHAPTER 11<br><br>**MEMORANDUM OF DECISION RE REMAND FROM THE DISTRICT COURT FOR THE LIMITED DETERMINATION OF EXCUSABLE NEGLECT UNDER FED. R. BANKR. P. 8002(d)(1)(B)**<br><br>[No hearing required] |

On April 9, 2014, the Court issued its Memorandum of Decision re Trial on (1) Validity of Lien; and (2) Disallowance of Claim (the "Trial Memorandum"), finding after a full trial on the merits that John Hebb ("Hebb") was not a creditor of Debtor's bankruptcy estate (bankr. doc. no. 356). An Order Sustaining Debtor's Objection to Hebb's Claim was entered on the bankruptcy docket (no. 357), and a Partial Judgment in favor of Debtor was entered on the adversary docket (no. 115).

On April 25, 2014, at 12:02 a.m., Hebb filed a Motion for New Trial (the "New Trial Motion"). Under Fed. R. Bankr. P. 9023, a motion for a new trial must be filed no later than 14 days after entry of judgment. A timely motion for a new trial will toll the time for appeal until "the entry of the order disposing of the last such motion outstanding." Fed. R. Bankr. P. 8002(b)(1)(C). Hebb's New Trial Motion was filed 15 days after judgment was entered, and thus

did not toll the appeal deadline.  Nevertheless, on May 6, 2014, Hebb filed a Notice of Appeal to the U.S. District Court (bankr. doc. no. 380).

On May 7, 2014, Hebb filed a Motion to Deem New Trial Motion Timely Filed (the "Timeliness Motion"), in which he argued that he could not file his New Trial Motion on time using the recommended internet browser due to CM/ECF technical failures (bankr. doc. no. 384).  On that same day, Hebb also filed a Motion to Extend Time to Appeal under Rule 8002(c) (the "Motion to Extend").  The Court entered an order granting the Timeliness Motion on May 9, 2014 because the New Trial Motion "was late by solely a few minutes and, as such, there is no prejudice to Debtor." [bankr. doc. no. 395 at 2.]  The Court then denied the Motion to Extend as moot.

Reviewing the appeal, the District Court explained that "a court may not enlarge the time for taking action under Rule[] . . . 9023 [which governs timing for a new trial motion]." Fed. R. Bankr. P. 9006(b)(2). Accordingly, the District Court found that the Court lacked authority to deem Hebb's New Trial Motion timely filed, even if it found there was sufficient justification for doing so. See In re Se. Bank Corp., 97 F.3d 476, 478 (11th Cir. 1996) (citing 9006(b)(2) to conclude that "the bankruptcy court was without jurisdiction to grant [a] motion for rehearing" when the motion was untimely filed under Rule 9023; see also In re Harper, 489 B.R. 251, 260 (Bankr. N.D. Ga. 2013) (declining to accept late filing barred by rule 9006 even though the filing was "two minutes and forty-four seconds late" due to a computer error).  As Hebb's New Trial Motion was untimely, it could not toll the time for appeal, and Hebb's May 6, 2014 Notice of Appeal was also untimely.

Bankruptcy courts have discretion to grant extensions for appeal "within 21 days after" the time for appeal has expired upon a party's motion and showing of excusable neglect.  Fed. R. Bankr. P. 8002(d)(1)(B).  Hebb's motion for extension of time under Rule 8002(c)(2) is timely in that it was filed within 21 days after expiration of the April 24, 2014 deadline to file a notice of appeal.  The District Court remanded the matter for the limited purpose determining whether Hebb has met his burden of establishing "excusable neglect."

//
//
//
//

Standard

Fed. R. Bankr.P. 8002(a) provides that, subject to certain exceptions not applicable here, a notice of appeal must be filed with the bankruptcy clerk within fourteen (14) days after the entry of judgment.

Rule 8002(d) provides for an extension of the fourteen (14) day appeal period as follows:

(1) When the Time May be Extended. Except as provided in subdivision (d)(2), *the bankruptcy court may extend the time to file a notice of appeal* upon a party's motion that is filed:

(A) within the time prescribed by this rule; or

(B) *within 21 days after that time, if the party shows excusable neglect.*

...

(3) Time Limits on an Extension. No extension of time may exceed 21 days after the time prescribed by this rule, or 14 days after the order granting the motion to extend time is entered, whichever is later.

Fed. R. Bankr.P. 8002 (emphasis added).

Under Rule 8002(d)(1)(B), the Plaintiffs carry the burden of proving that the failure to file a timely appeal was the product of "excusable neglect." See, *e.g.*, In re Boyce, 2009 WL 4060093, at *1 (Bankr.E.D.Pa. Nov. 18, 2009); *accord* In re AMF Bowling Worldwide, Inc., 520 B.R. 185, 196 (Bankr.E.D.Va.2014).

The Supreme Court definitively construed Rule 9006(b)(1) in Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Pioneer informs the application of excusable neglect in every court rule in which that term is used. The Ninth Circuit specifically has held that the Pioneer standard for Rule 9006(b)(1) is used in applying Rule 8002(d)(1)(B). See Picany v. Andrews, 389 F.3d 853 (9th Cir. 2004) (en banc); In re Zilog, 450 F.3d 996 (9th Cir. 2006).

To determine whether a party's failure to meet a deadline constitutes "excusable neglect," courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3)

the reason for the delay; and (4) whether the movant acted in good faith. <u>Ahanchian v. Xenon Pictures, Inc.</u>, 624 F.3d 1253, 1261 (9th Cir. 2010) <u>citing</u>, <u>Pioneer</u>, 507 U.S. at 395.  <u>See also</u> <u>Briones v. Riviera Hotel & Casino</u>, 116 F.3d 379, 381 (9th Cir.1997) (adopting the <u>Pioneer</u> test for consideration of Rule 60(b) motions).

      <u>Pioneer</u> requires that the issue of excusable neglect be determined in the context of the particular case. <u>Pincay</u>, 389 F.3d at 859 (stating that the "question is whether there [is] enough in the context of [the] case to bring a determination of excusable neglect within the ... court's discretion"). The burden of presenting facts demonstrating excusable neglect is on the movant. <u>Key Bar Investments v. Cahn</u>, 188 B.R. 627, 631 (B.A.P. 9th Cir. 1995); <u>In re Pac. Gas & Elec. Co.</u>, 311 B.R. 84, 89 (Bankr.N.D.Cal.2004).

      Because <u>Pioneer's</u> four factors are non-exclusive, the court is permitted to take "account of all relevant circumstances surrounding the party's omission" in making an equitable determination. <u>Pioneer</u>, 507 U.S. at 395; <u>see</u> <u>Briones</u>, 116 F.3d at 382 n. 2 (noting that "we will ordinarily examine all of the circumstances involved rather than holding that any single circumstance in isolation compels a particular result regardless of other factors").  <u>Pioneer</u> mandated a balancing test for divining excusable neglect, but <u>Pioneer</u> did not assign the weight to be accorded by the court to each of its non-exclusive factors in making an equitable determination. <u>See</u> <u>Pincay</u>, 389 F.3d at 860 (stating that "we leave the weighing of <u>Pioneer's</u> equitable factors to the discretion of the ... court in every case"); <u>Lowry v. McDonnell Douglas Corp.</u>, 211 F.3d 457, 463 (8th Cir.2000) (stating that "[t]he four <u>Pioneer</u> factors do not carry equal weight"), cert. denied, 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 248 (2000).

      Given the policy favoring finality of bankruptcy orders, acceleration of appeals, and the like, which underlies the time periods and requirements of Rule 8002, however, the equitable standard adopted by <u>Pioneer</u> should, in this context, be rigorously applied so that excusable neglect is only infrequently found. 10-8002 <u>Collier on Bankruptcy</u> ¶ 8002.13 (16th Ed.).

//
//
//
//
//
//

Analysis

*The danger of prejudice to the opposing party*

According to Hebb, there is no perceivable prejudice to Debtor.   Hebb bases this contention on the Court proceeding with the bankruptcy case *i.e.* setting dates for approval of the disclosure statement and plan confirmation, and the appeal of this Court's ruling that, among other things, Hebb waived whatever right to arbitration he may have had though his delays in this and the state court case.  See Memorandum re Whether This Case Should be Dismissed, bankr. doc. no. 175.  Hebb believes that there is no prejudice to Debtor because "the bankruptcy court … will no doubt continue to so proceed despite this appeal as well."

In examining the totality of the circumstances, Hebb's argument focuses on a tree while ignoring the thick, procedural forest in which he is standing.  Debtor's reorganization was delayed for years due to Hebb's inability (or unwillingness) to follow directions from the Court or the procedures required by the Rules.  The Court has described the details of Hebb's lack of attention to deadlines and procedural rules in the six memoranda issued in this case and the related adversary proceeding.  While Hebb cannot be faulted for the initial delay caused by Debtor's bankruptcy, Hebb is responsible for his post-petition dilatory conduct.  Relevant circumstances to be taken into consideration in the context of a Motion to Extend "may include the procedural context in which the extension is sought."  Dix v. Johnson (In re Dix), 95 B.R. 134, 137 (9th Cir. BAP 1988).  Thus, a detailed recitation of the delays caused by Hebb in this case is warranted.[1]

Hebb began his involvement with this bankruptcy by asserting a claim against Debtor and insisting that he had an enforceable pre-petition right to have the dispute resolved in arbitration.  Hebb did not, however, file his Motion for Relief from Stay to proceed with the arbitration in state court until March 2, 2011, five months after the bankruptcy commenced. Although Debtor filed an objection to his claim, Hebb failed to respond to the objection. Instead, Hebb filed an appeal with the Bankruptcy Appellate Panel for the Ninth Circuit (the "B.A.P") requesting, that this Court be ordered to lift the automatic stay to proceed immediately to

---

[1] The Court has exercised its discretion to take judicial notice of the documents filed in the bankruptcy and adversary proceeding pursuant to FRE 201, as made applicable to bankruptcy proceedings by FRBP 9017.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

arbitration. On June 23, 2011, the B.A.P. remanded Hebb's appeal for this Court to enter an Order granting or denying Hebb's Motion for Relief from Stay.

On July 26, 2011, the Court granted Hebb's Motion for Relief from Stay as requested. Hebb then never properly submitted an order as required of the prevailing party by Local Bankruptcy Rule 9021-1(1).[2]  Between the Court's July 26, 2011 ruling granting relief from stay and the January 10, 2012 notice from the B.A.P. stating that no order had been entered (bankr. doc. no. 136), Hebb never contacted chambers or filed anything to inquire as to why an order had not been entered. Had an inquiry been made, the fact that no order was ever lodged and entered would have been discovered and easily addressed.  The Court ultimately entered its own Order granting Relief from Stay on January 17, 2012, after receiving the Notice of B.A.P. Remand on January 10, 2012 (bankr. doc. no. 138).

Hebb then failed to appear at a status conference held by this Court on September 14, 2011. Hebb also failed to appear at the February 16, 2012 hearing on an order to show cause why chapter 11 case and adversary proceeding should not be dismissed.  In the interim, Hebb filed a Motion to Reopen the State Court Action for the apparent purpose of compelling arbitration. Again, instead of moving ahead to bring the attorney fee dispute to a quick resolution, Hebb orally withdrew the motion at the state court hearing on April 18, 2012 despite the Superior Court's offer to either set the case for trial or send it to arbitration.  Hebb's inaction once again delayed resolution of the one dispute holding up the progress of the entire bankruptcy. Hebb did not formally request that this Court compel arbitration until March 12, 2012; although Hebb did request this Court's assistance in selecting an arbitrator in response to Debtor's status report (the "Preliminary Response"). Hebb's request in the Preliminary Response was made approximately four months after the Court granted Hebb's Motion for Relief from Stay, and Hebb's March 12, 2012 request came nearly eight months later.

In preparation for the continued hearings on November 9, 2011, Debtor filed a status report indicating that the State Court held a status conference in the State Court Action on September 14, 2011, wherein the case was dismissed as a result of Hebb's failure to appear at the State Court status conference, and Debtor renewed its request to go forward with its Motion for Summary Judgment.   In the Preliminary Response, filed November 8, 2011, Hebb indicated

---

[2] Although Hebb argued that he did submit an order, it was at the very least never done properly, and, in any case, Hebb never followed through to make sure he obtained an entered order.

that the State Court had coordinated with his office when it dismissed the case and ruled that there was nothing left for the State Court to do after this Court ruled on the relief from stay motion.  Neither party produced a transcript. At the continued hearings on November 9, 2011, the Court informed the parties that it needed the minute order and the record of the State Court because of the conflicting statements as to the reason for dismissal of the State Court action. The Court set a deadline of December 1, 2011 for Hebb to submit the State Court record, and continued the hearings to January 18, 2012 at 1:00 p.m.   Again, Hebb completely ignored the deadline set by the Court and, on December 6, 2011, Hebb filed a declaration and certified copy of the State Court minute order from September 14, 2011.

Given the lack of progress in the Chapter 11 case, the Court issued an Order to Show Cause why the chapter 11 case should not be dismissed for cause, and the adversary dismissed as moot and set the hearing thereon for February 16, 2012 at 1:00 p.m., when the Court was holding other hearings for this case.  Plaintiff and Defendant were required to file any responses in writing no later than February 9, 2012. Responses were filed by both parties on February 9, 2012; Hebb, in typical fashion, filed an additional late pleading on February 13, 2012.  All pleadings submitted by both sides, whether timely filed or not, and the entire record were carefully considered by the Court in preparation for the order to show cause hearing. At the hearing on February 16, 2012, Hebb did not appear at 1:00 p.m. The hearing commenced at 1:03 p.m. Hebb made a phone call to chambers at 1:08 p.m., after the hearing had commenced and was nearly over, stating that he would be 10 to 15 minutes late. The court and Debtor's counsel had sorted through all issues, the Court had ruled, and already provided dates for the scheduling order when Hebb walked in to the back of the courtroom at 1:14 p.m.

As noted above, the case had been delayed many months due to Hebb's failure to appear at the State Court hearing. The hearing on the OSC was also not the only bankruptcy hearing where Hebb arrived late. On July 26, 2011, Hebb called the chambers to say he would be late for the 10:00 am hearing, and the court and counsel waited until 10:14 a.m. for him to arrive, even though no other matters were on calendar. See Hr'gTr., July 26, 2011, 1:20 (bankr. doc. no. 111).  At that hearing, Hebb displayed his disdain for the Court-ordered briefing schedule and Rules by raising new matters that were not noticed or calendared for that day, and improperly serving opposing counsel with his papers as he brought it up in court.

Hebb's lackadaisical approach to the case delayed the Court's consideration of Debtor's Motion for Summary Judgment, filed on May 5, 2011.  Despite no stay being in effect, Hebb ignored his duty to respond to the May 5 Motion for Summary Judgment while an appeal was pending and while he was supposed to have been pursuing his claim through arbitration.  On June 27, 2012, the Court issued a Memorandum resolving the party's dispute over case dismissal.  In an effort to cease procedural litigation and finally get to the merits, the Court gave Hebb an extension and a new time to respond to the Motion for Summary Judgment, over Debtor's objection. Memorandum of Decision re Order Vacating Order to Show Cause, bankr. doc. no. 154, 10:5-10.  Debtor's additional briefing was due July 18, 2012, Hebb's opposition was due August 1, 2012, and Debtor's reply was due August 15, 2012. Id.

On July 17, 2012, Debtor refiled the Motion for Summary Judgment (the "MSJ," bankr. doc. no. 182). Hebb timely filed an Opposition and Statement of Genuine Issues on August 1, 2012. Hebb's Opposition was all of two pages (including the caption page) and a two page declaration.  See Opposition to MSJ, bankr. doc. no 187.  On August 15, 2012, *fifteen days after the extended deadline*, Hebb filed a Supplemental Opposition (bankr. doc. no. 197) and Cross Motion for Summary Judgment (bankr. doc. no. 198). On August 16, 2012, Hebb filed a Supplemental Statement of Genuine Issues of Material Facts (bankr. doc. no. 199). As it was clear to the Court that Hebb had filed a cursory response to ensure timeliness and then filed unauthorized, untimely supplemental pleadings that proved to be his substantive opposition to the MSJ, the Court struck Hebb's Supplemental Opposition, Supplemental Statement of Genuine Issues of Material Facts, and Cross Motion for Summary Judgment.

The tortured history of delays continued after the Court issued its ruling granting partial summary judgment finding that any secured claim Hebb had was satisfied pre-petition. Memorandum of Decision re Motion for Summary Judgment, bankr. doc. no. 221.  The Court set a briefing schedule for a supplemental motion for summary judgment related to Hebb's alleged unsecured claim.  See Order Continuing Hearing and Setting Briefing Schedule, bankr. doc. no. 222.  Debtor filed its Supplemental Motion for Summary Judgment on December 18, 2012, as ordered by the Court.  Hebb, again, failed to respond and did not file his cross-motion for summary judgment.  Hebb did, however, file an untimely motion to dismiss the bankruptcy.  At the scheduled hearing on the Supplemental MSJ on March 15, 2013, the Court denied Hebb's motion to dismiss and the Supplemental MSJ, finding that there were genuine issues of material

fact that required a trial.  In one last hopeful attempt to resolve these issues, the parties agreed to mediation (with some convincing of the Court).

Thereafter, the Court held several hearings with the parties to help them craft a pre-trial order.  On June 24, 2013, the parties informed the Court that they had scheduled the mediation with a Court-approved mediator, and the Court continued the status conference to July 30, 2013.

Meanwhile, the B.A.P. affirmed this Court's ruling that there would be no arbitration on July 15, 2013,[3] although this Court and the B.A.P. made it clear long before then that trial was not stayed.  On July 30, 2013, the Court held a pre-trial conference to integrate unilateral proposed pre-trial orders submitted both parties. At the July 30, 2013 hearing, Hebb indicated that he intended to appeal the B.A.P. Ruling and orally requested a stay of the forthcoming trial pending the appeal. Pre-trial Conference. Hr'g Tr., 11:5-19 (ad.pro. doc. no. 80). Hebb then stated that, if the Court were to deny his request for a stay, he would seek a stay of the trial pending appeal from the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). Id. The Court denied Hebb's oral request for stay pending appeal.  Id. at 11:17-19. The Court then set forth dates for pre-trial briefing, exchange of exhibit books, and the entry of the pre-trial order, which were later included in the Pre-Trial Scheduling Order entered on August 2, 2013 (the "Scheduling Order," ad.pro. doc. no. 73). Among other dates, the Scheduling Order required the parties to exchange hard copies of exhibit books by August 30, 2013 and specified that the Local Bankruptcy Rules applied to the proceeding.  Id.  The next episode of this saga further demonstrates Hebb's complete disregard for this Court's orders and his opposing counsel.

Thereafter, on August 14, 2013, Hebb filed a Notice of Appeal of the B.A.P. Ruling to the Ninth Circuit (case no 13-60097). On August 26, 2013, a mere four days before the exhibit book exchange deadline and nearly a month after disclosing his intention to do so, Hebb filed an "Emergency Motion to Stay Lower Court Action" (the "Emergency Stay Motion," Ninth Circuit case no. 13-60097, doc. no. 4). In the 1663 page Emergency Stay Motion, Hebb made the following argument, among others, in the section entitled "DETAILS BEHIND REASON FOR STAY REQUEST":

---

[3] The "B.A.P. Ruling," ad. doc. no. 78.

The second <u>deadline</u>, for <u>much more onerous arbitration inconsistent work and expense throughout the week of 8/26/13 in the production of multiple copies of exhibit books, all made expressly subject to the Local Bankruptcy Rules by the Pre-Trial Scheduling Order</u> is <u>Friday 8/30/13</u>.

…

To avoid extensive preparation costs, efforts and time involved in meeting the next of several future deadlines, namely the prior preparation to meet the next deadline of 5pm Friday 8/30/13, wholly undercutting the parties' mandated and protected rights and benefits under both the FAA and CAA, creditor appellant requests a response on this stay request by or before Wednesday morning 8/28/13, or as soon thereafter as possible for the Court.

<u>Emergency Stay Motion</u>, 4:15-19; 5:1-6 (emphasis in original).

On August 29, 2013, the Ninth Circuit denied the Emergency Stay Motion and confirmed that "[t]he briefing schedule previously established shall remain in effect."[4]  It was clear from Hebb's entreaties in the Emergency Motion that he was attempting to "avoid extensive preparation costs, efforts and time." <u>Emergency Stay Motion</u>, 4:15-19; 5:1-6. Such admissions, not made to this Court, led the Court to draw the reasonable inference that Hebb had not yet begun expending said costs and effort to compile the voluminous exhibit books when he was required to under the Pretrial Orders – exhibits that, by Hebb's own admissions, contain somewhere around 10,000 pages. In the end, these mistakes were made because Hebb, once again, left a critical task to the very last minute when he had years to gather the evidence that would prove his claim, and ample direction by the Court on how to properly compile the exhibit books in accordance with the Local Bankruptcy Rules.

The prejudice to Debtor grew as the delay continued. Debtor filed an objection to Hebb's claim, and a plan and disclosure statement, in March 2011 as well.  Debtor then filed a motion for summary judgment in May 2011 in an attempt to get the principal issue in the case decided. Debtor alleged that it had found debtor-in-possession financing which would allow it to get its business going once again now that its patent rights have been resolved, but Debtor asserted that the dispute with Hebb kept the financing from being released. Debtor had been stranded in chapter 11 for three years and eleven months, unable to reorganize due to Hebb's unresolved claim, before it was finally able to confirm a plan on September 24, 2014.  <u>Order Confirming Debtor's Chapter 11 Plan</u>, bankr. doc. no. 460.

---

[4] Order Denying Emergency Stay Motion, Ninth Circuit case no. 13-60097, doc. no. 8.

Debtor's purgatorial stay in this Court, however, was not yet over.  Debtor moved for a final decree and to close the case.  Motion for Entry of Final Decree, bankr. doc. no. 468. Debtor was not able to obtain a final decree and move on because of the pending appeal at the Ninth Circuit.  Fed. R. Bankr. P 3022 requires that the case to be fully administered before a final decree is entered.  Although the plan has been consummated, and everything is ready for a final decree, until all motions, contested matters and adversaries are finally resolved, the administration of the case is not complete.  See 1991 Adv. Comm Note to FRBP 3022; Omega Optical Inc., 476 B.R. 157 (Bankr. E.D. Pa. 2012); 11 USC 350(a). If Hebb is permitted to continue with this untimely appeal as well, Debtor will be unduly prejudiced because it will be liable for quarterly fees to the United States Trustee until a final decree can be issued.  28 U.S.C. § 1930(a)(6).  Debtor will also continue to pay its attorney to monitor the case and do all required reporting to the United States Trustee.  See In Re Rebel Rents, 326 B.R. 791 (Bankr.C.D.Cal. 2005).

Had Hebb properly pursued arbitration after shutting down a speedy resolution of this issue in bankruptcy court, Debtor could have proceeded expeditiously with its reorganization, or the case could have been converted to Chapter 7, or dismissed.  No matter the outcome, it was Hebb's total lack of attention to deadlines, professional courtesy, and respect for this Court's orders that resulted in extreme prejudice to the Debtor and delayed its reorganization.  The Court weighs this Pioneer factor heavily in favor of denying the motion.

*The length of the delay and its potential impact on the proceedings*

Hebb's Motion was filed nine days after expiration of the appeals deadline, on May 7, 2014.  The motion was timely under Rule 8002(c)(2). The delay was not significant, and Hebb' action in seeking an extension does not, in and of itself, adversely affect judicial proceedings. It is, however, "important for the court to determine whether granting an extension would unduly delay the administration of the bankruptcy case," given "the unique context of bankruptcy proceedings." Nugent v. Betacom of Phoenix, Inc. (In re Betacom of Phoenix, Inc.), 250 B.R. 376, 381 n. 6 (9th Cir. BAP 2000).

The court takes judicial notice of the fact that Debtor filed its voluntary petition for reorganization on October 5, 2010, and confirmed its plan of reorganization on September 24, 2014. One adversary complaint, one partially consolidated objection to claim, three appeals,

and one trial occurred before Debtor was able to confirm a plan. All, but one appeal, has been resolved. There are no other pending adversary proceedings. Indeed, there has been no substantive activity in this bankruptcy since confirmation, except the ongoing litigation by Hebb against Debtor. Debtor is ready to exit bankruptcy and "to function as any other business entity, under its own power in its usual ways of conducting business, without judicial restraint or interference, complying with all applicable laws and its agreements." Barber v. Bettendorf Bank, N.A. (In re Pearson Indus., Inc.), 152 B.R. 546, 557 (Bankr.C.D.Ill.1993). Instead, Debtor continues to remain a reorganized debtor in an active bankruptcy because it cannot be issued a final decree until all appeals have been resolved.

The Ninth Circuit recognizes that strict enforcement of the 10–day appeal period under Rule 8002(a) "is justified by the 'peculiar demands of a bankruptcy proceeding,' primarily the need for expedient administration of the [b]ankruptcy estate aided by certain finality of orders issued by the [c]ourt in the course of administration." In re Rebel Rents, 326 B.R. at 805, quoting Galt v. Jericho–Britton (In re Nucorp Energy, Inc.), 812 F.2d 582, 584 (9th Cir.1987); see Betacom, 250 B.R. at 381 n. 6. The abbreviated time constraints for filing a notice of appeal in bankruptcy which are jurisdictional in nature serve to "[assure] prompt appellate review, often important to the administration of a case under the Code." Advisory Committee Note (1983). They also provide a definite point, in the absence of a notice of appeal, that litigation will come to an end. As outlined above, the sluggish administration of this case was the result of Hebb's failure to follow deadlines and instructions. Given the policy favoring the finality of bankruptcy orders, acceleration of appeals, the context of the dispute between the parties, and the advanced stage of Debtor's reorganization, the court weighs this Pioneer factor in favor of denial.

*The reason for the delay*

Hebb details the steps he took to get the New Trial Motion timely filed in his declaration in support of the Motion to Extend (the "Declaration"). In the Declaration, Hebb states that he "scheduled the evening of 4/23/14 to complete and electronically file a motion for new trial in this matter -- a full day prior to what I understood to be the 4/24/14 deadline for such motion." Declaration, 9:10-13. Waiting until the day before something is due to complete a time sensitive task has been Hebb's overarching problem since his involvement in this case. As excruciatingly detailed above, Hebb regularly appeared late at hearings, filed untimely pleadings, failed to

timely lodge orders, failed to abide by (extended) deadlines, and failed to follow clearly explained  pre-trial procedures.

While the ostensible reason for the delay may have been issues with the transcript, as Hebb described in the Declaration, the real reason for the delay was that Hebb did not even bother to review the transcript prior to the day before the deadline ran.  Had Hebb not waited until the day before to begin reviewing the file in preparation for his motion, he would have discovered the issues with the transcript in sufficient time to obtain the corrected transcript and timely file the New Trial Motion, or in time to file a timely motion for extension of the appeals deadline.  Once again, Hebb blames everything and everyone for his failure to timely file pleadings, while ignoring the role his own procrastination played.  The court weighs this <u>Pioneer</u> factor in favor of denial.

*Whether the movant acted in good faith*

There is no evidence that Hebb acted with bad faith in filing the Motion to Extend.  The Declaration describes his efforts to get the New Trial Motion timely filed.  While Hebb's efforts may have been too little, too late, the Court cannot attribute bad faith in the context of this Motion.  Debtor did argue in opposition to the New Trial Motion, however, that Hebb's conduct in this case and the "incompetent manner" in which the New Trial Motion was brought demonstrates that Hebb brought these post-judgment motions to retaliate against Debtor by making it spend more money to defend itself against "baseless appeals."  <u>Debtor's Opposition to Motion for New Trial</u>, 12:13-22 (bankr. doc. no. 377).  Given that there are two different interpretations of the procedural history of this case, the Court weighs this factor neutrally.

//
//
//
//
//
//
//
//
//
//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court balances the totality of the <u>Pioneer</u> factors in favor of denial, and finds that Hebb has not satisfied his burden to establish that his failure to timely file a notice of appeal was the result of excusable neglect.  Thus, Hebb's Motion to Extend under FRBP 8002(c)(2) is denied.

The Court will enter a separate order consistent with this ruling.

### 

Date: April 14, 2015

Maureen A. Tighe
United States Bankruptcy Judge